2008 WY 36

**Brandy Fay PENDLETON,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 06–129.

Supreme Court of Wyoming.

April 2, 2008.

---

Representing Appellant: D. Terry Rogers, Interim State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director, Prosecution Assistance Program; Geoffrey L. Gunnerson, Student Director; and Brian J. Hunter, Student Intern. Argument by Mr. Hunter.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Brandy Pendleton (the appellant) was convicted of being an accessory before the fact to first-degree murder and of conspiring to commit first-degree murder. Part of the evidence submitted to the jury during her trial was a tape-recorded interview wherein the appellant discussed her involvement in the attempted murder. In this appeal, the appellant alleges a number of errors

resulting from the admission of this recorded interview. She also contends that the prosecutor improperly elicited testimony from a co-conspirator concerning a guilty plea. We will affirm.

## ISSUES

[¶ 2] The appellant presents the following issues for our review:

1. Whether plain error occurred when the jury was permitted to hear the appellant's entire recorded police interview?

2. Whether trial counsel rendered ineffective assistance by not objecting to admission of the recorded interview or by the tactical decision to allow the interview to be admitted?

3. Whether the district court erred when it allowed the jury to take a recording of the interview into the deliberation room?

4. Whether plain error occurred when the State elicited in its case-in-chief that the principal pled guilty to attempted second-degree murder?

## FACTS

[¶ 3] On June 25, 2004, the appellant was released from jail after serving a ten-day sentence for delivery of methamphetamine. As her husband was driving her home from jail, the appellant spotted Armando Canales (Cali). The appellant asked her husband to stop the vehicle and she confronted Cali because she suspected that he had "snitched her out." At that time, the appellant told Cali, "I'll see you dead."

[¶ 4] Later that same day the appellant met with Dayle Wooden and Josh Dubois (J.D.) and discussed Cali. The appellant told J.D. that Cali was a "rat" and that he was looking for J.D. The appellant offered J.D. $7,000 and a fake I.D. if he would kill Cali. Later that night, J.D. found Cali, drove him out of town, and shot him twice with a sawed-off shotgun. After shooting Cali, J.D. fled to Cortez, Colorado, where he was eventually arrested. Cali did not die from his wounds.

[¶ 5] Almost a year after the shooting, Wooden, who was then incarcerated in Utah on unrelated charges, told authorities that he had information about his and the appellant's involvement in the Cali shooting. Wyoming law enforcement officers interviewed both Wooden and J.D. (who had already pled guilty to the attempted murder of Cali). Both confirmed the appellant's involvement in the attempted murder. On June 8, 2005, Detectives Vranish and Matthews interviewed the appellant regarding her involvement in the crime.

[¶ 6] Based on the information gathered by interviewing Wooden, J.D., and the appellant, the State of Wyoming filed a felony Information against the appellant on June 20, 2005. The appellant was charged with being an accessory before the fact to first-degree murder and with conspiring to commit first-degree murder. The appellant pled not guilty, but was convicted on both counts after a four-day jury trial.

[¶ 7] The appellant filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 8] The appellant did not object at trial to any of the alleged errors and thus our review is for plain error.

> When no objection is made at trial to the evidence challenged on appeal, we apply our plain error standard of review. Plain error will not be found unless: (1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice.

*Cazier v. State*, 2006 WY 153, ¶ 10, 148 P.3d 23, 28 (Wyo.2006).

[¶ 9] Additionally, the appellant raises a claim of ineffective assistance of trial counsel for the first time in this appeal. Because the district court did not hear the claim or make any findings of fact or conclusions of law, this Court must conduct a *de novo* review of the facts pertinent to the claim of ineffective assistance. *Barker v. State*, 2006 WY 104, ¶ 16, 141 P.3d 106, 113 (Wyo.2006).

## DISCUSSION

***Whether plain error occurred when the jury was permitted to hear the appellant's entire recorded police interview?***

[¶ 10] The appellant first argues that it was plain error for the district court to allow the jury to hear the recorded interview. Specifically, she contends that certain statements made by the officers during the interview were misstatements of the law, that the officers expressed opinions of guilt, and that the officers implicitly vouched for the credibility of the State's witnesses when, while questioning her, they accused her of lying. The appellant points to the following high-lighted portions of the recording as the basis for her claims:

[Appellant]: They are trying to find out what I knew about Cali and J.D.

M. Vranish: And did you say, "yeah, I saw J.D. tonight with a sawed off shot gun. He was at my house there cutting the barrel off.

[Appellant]: No, sir I didn't because I didn't want to go right back to jail.

M. Vranish: Because you're involved. That's right. Because you had prior knowledge of it. Is that not correct?

[Appellant]: I had prior knowledge of what he said was going to happen, but J.D. has told some really far fetched stories before.

M. Vranish: **Yeah. So, right there, you admit that you had knowledge. Right there you admit that you are an accessory before the fact.**

[Appellant]: I am not an accessory . . .

D. Matthews: **You are, you just admitted to me, you said you had prior knowledge, see Brandy, this is the thing that is going to get you into trouble, you're admitting the crime, but you are not being honest about the crime.**

[Appellant]: What does it matter? You guys have already pre-determined what's going to happen to me, haven't ya?

D. Matthews: **Well, there, there is no doubt you're going to go to jail Brandy, we are going to be honest with you. But, at this point you can't hurt yourself anymore, you've, you've, you've filled the**

elements of the crime. **You have told us what happened.**

M. Vranish: I'm not the Judge and I'm not the jury, so no, I haven't pre-determined what's going to happen to you.

D. Furlong: Oh, yeah, that's what you meant. **You're going to jail today.**

M. Vranish: Uh, huh.

D. Furlong: But, **how long you spend in jail** is not up to the three people in this room, okay. What charges are eventually, the disposition on the final charges, are not in the hands of the three in this room, that's in the hands of your defense attorney, the County Prosecutor, and the Judge.

. . . .

D. Furlong: You'll, you'll be entitled to [an attorney]. But, **what makes the difference here is the cooperation level that goes into it from this interview, might, have some determination** . . . .

[Appellant]: Oh, I cooperated enough to put myself in jail didn't I?

M. Vranish: You did.

(Emphasis added.)

[¶ 11] Because the third prong of the plain error test is dispositive, we will begin our analysis by examining whether prejudice resulted when the jury heard the above-quoted portion of the recorded interview. *See supra* ¶ 10. Under plain error analysis, the appellant has the burden of showing material prejudice. *Butcher v. State,* 2005 WY 146, ¶ 49, 123 P.3d 543, 558 (Wyo. 2005). To establish prejudice, the appellant must show a reasonable probability that she would have received a more favorable verdict in the absence of the error. *Miller v. State,* 2006 WY 17, ¶ 15, 127 P.3d 793, 798 (Wyo. 2006). When analyzing whether the inclusion of certain evidence resulted in prejudice to the appellant, we must view that evidence in light of the entire record. *Talley v. State,* 2007 WY 37, ¶ 14, 153 P.3d 256, 261 (Wyo. 2007).

[¶ 12] This trial lasted approximately four days. The prosecution called eight witnesses and the defense presented six. The portion of the tape-recorded interview to which the appellant objects on appeal is a short excerpt

from a three-hour recorded interview. When the state presented the recorded interview to be played for the jury, the district court judge questioned whether a proper foundation had been laid. Defense counsel did not object to the admission of the evidence, or portions thereof, but instead advocated for its admissibility, arguing that the foundation for the recording was evident in the recording itself.

[¶ 13] It is not surprising that the appellant advocated for the admission of the evidence as this evidence appears to have been an integral part of the appellant's trial strategy. Defense counsel repeatedly referred to the recorded interview, and the specific portion to which the appellant now objects. For example, during opening statements, defense counsel said the following:

The police, you're going to hear a three hour—a three hour plus statement from [the appellant] that she gave when the police arrested her on June 8, 2005, and they interrogated her. They said, "We want to question you about this. Were going to advise you about your constitutional rights." She agreed to talk to them. She went to the police department. She was held there and grilled and grilled and grilled for three hours. She told one story after another, dug herself a ditch she couldn't get out of, and finally admitted, "Yes, Josh Dubois came to my place at midnight or about that time."

. . . .

. . . The police say to her when they're trying to just browbeat her into a confession, "We've got statements from two people who told us the truth and we know that because their statements are the same. You lied to us"—and she did lie to them "so we know you're guilty."

. . . .

. . . The police didn't keep an open mind in this thing. They decided who they wanted to arrest for this and they went about trying to prove it. That's not the way people who are trying to investigate the facts do things. You listen to what goes on and then you let the facts take you to the conclusion. You don't go to the conclusion and then try to make the facts

fit your conclusion. That's whats happened in this case.

Defense counsel's opening statement reflects an intent to use the recording to demonstrate the officer's brow-beating, false accusations, and closed-mindedness.

[¶ 14] Additionally, the following colloquy, which occurred toward the end of the trial, indicates that the appellant intended to use the recorded interview as a means of presenting her version of the events without testifying in open court:

[Defense Counsel]: Your Honor, [the appellant] and I have spoken; and she will not be taking the stand. I wanted to advise you in open court that she has made that decision and ask her if that is, in fact, her decision.

The Court: All Right.

[The appellant]: Yes, your Honor.

The Court: All right. You're making that decision in light of the advice I gave you earlier today; is that correct?

[The appellant]: No, sir. It's in view of my statements earlier which they played in court that I have nothing further to say.

[¶ 15] During closing arguments, defense counsel reiterated that the appellant had held fast to her version of the events even in the face of aggressive and confrontational questions, and emphasized to the jury that they needed to listen to the entire tape, as a whole:

Ladies and Gentlemen, you can take a little excerpt here and a little excerpt there and make all of us guilty whenever we say anything. There's the tape. Listen to the damn tape. Because what [the appellant] finally said, when she got beaten down, beaten down, finally browbeatened [sic] and she'd tried to divert all the attention from herself, but when it finally came down to "We want the truth. If you want a deal, you better tell us the truth." She said, "I have told you the truth. . . ."

[¶ 16] As can be seen, the appellant relied heavily on the recorded interview, and this evidence was an important, if not vital, part of the appellants defense strategy. She cannot have it both ways, and now claim that she

was prejudiced by the inclusion of this evidence. In arguing prejudice, the appellant does not attempt to explain the contradiction between her trial and appellate positions, but instead she points to certain inconsistencies in the testimony of J.D. and Wooden and argues:

> In a case where the testimony is contradicted, not by the defense, but by the state's own witnesses, the chances of the conviction being a result of the improper comments heard through the recorded interview are even more likely. Prejudice has been shown when there is a likelihood that the verdict may have been more favorable had the error not occurred. In this case, there is a strong likelihood the verdict could have been more favorable had the jury not heard the misstatement of the law, expressed opinions on guilt, vouching for witnesses and using the accomplice's guilty pleas as substantive evidence of guilt.[1]

[¶ 17] The appellant's argument is simply inadequate to satisfy her burden of demonstrating prejudice. While she insists that the verdict would have been more favorable had the jury not heard the selected portion of the recorded interview, she fails specifically to articulate how the exclusion of the challenged evidence might have lead to a more favorable result, especially in light of the fact that, at the time of trial, her own counsel felt that admission of the tape was the appellant's best strategy. Given the substantial amount of evidence inculpating the appellant, and the limited strategical choices available to defense counsel, we are not willing to second-guess counsel and suggest that a different strategy might have been more productive. *Barkell v. State*, 2002 WY 153, ¶ 17, 55 P.3d 1239, 1243 (Wyo.2002).

[¶ 18] Finally, the potential for prejudice arising from the officers' alleged misstatements of the law or comments about the appellant's untruthfulness must also be considered in light of the jury instructions. The district court properly instructed the jury on the law of the case, and further instructed that "[t]he instructions given by the Court to you constitute the only law for your guidance on the case." Also, with regard to the question of truthfulness, the district court instructed that "it is the exclusive province of the jury to ... determine the credibility of all witnesses and evidence." We presume that juries follow such instructions. *Harlow v. State*, 2003 WY 47, ¶ 56, 70 P.3d 179, 199 (Wyo.2003). Thus, any adverse effect that the alleged improper statements might have had on the jury was mitigated by the jury instructions. *See Christian v. State*, 883 P.2d 376, 381 (Wyo.1994); *James v. State*, 888 P.2d 200, 208 (Wyo.1994).

[¶ 19] When viewing the evidence in the context of the entire trial, we cannot see how its inclusion prejudiced the appellant. Thus, we find that the appellant has failed to demonstrate that the fairness and integrity of the judicial proceeding were adversely affected when the jury heard the entire recorded interview.

*Whether trial counsel rendered ineffective assistance by not objecting to admission of the recorded interview or by the tactical decision to allow the interview to be admitted?*

[¶ 20] In her next argument, the appellant contends that her trial counsel's failure to object to the admission of the recorded interview or tactical decision to have the interview admitted were outside the range of professionally competent assistance. When analyzing ineffective assistance of counsel claims, this Court has adopted the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Munden v. State*, 698 P.2d 621, 623 (Wyo.1985); *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986).

> Under this standard, appellant must demonstrate
>
> " * * * first * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning

---

1. The appellant's mention of the accomplice's guilty plea does not factor into the propriety of the admission of the recorded interview, but rather is a separate issue that will be addressed later.

as the 'counsel' guaranteed [appellant] by the Sixth Amendment. Second, [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable. * * *" 104 S.Ct. at 2064.

*Frias,* 722 P.2d at 145. The appellant must make both showings in order to demonstrate that a breakdown in the adversary process made the result unreliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2059. The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State,* 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo. 2006). In order to meet this burden, the appellant must overcome the strong presumption that counsel's performance was competent. *Rion v. State,* 2007 WY 197, ¶ 2, 172 P.3d 734, 736 (Wyo.2007).

[¶ 21] "An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice." *Dettloff v. State,* 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo.2007). "Indeed, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Martinez,* 2006 WY 20, ¶ 23, 128 P.3d at 663 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069). Thus, we will limit our analysis of appellant's ineffective assistance claim to the prejudice prong of the above-articulated test. *See supra* ¶ 19. To show prejudice, the appellant must "demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different." *Dettloff,* 2007 WY 29, ¶ 19, 152 P.3d at 382.

[¶ 22] Appellant's ineffective assistance claim is based on trial counsel's failure to prevent admission of the recorded interview evidence or the decision to use the interview as part of the defense strategy. Because we have already concluded above that the appellant failed to meet her burden of proving prejudice resulting from the admission of that evidence, we must necessarily reach the same result with regard to her ineffective assistance claim. *See supra* ¶ 19. Without a showing of prejudice, we cannot conclude that appellant's trial counsel was ineffective.

*Whether the district court erred when it allowed the jury to take a recording of the interview into the deliberation room?*

[¶ 23] During deliberations, the jury requested either a transcript of the appellant's recorded police interview or the actual audio disks so they could replay them. When the interview was first played for the jury in open court, the disks were marked as Exhibits 3A and 3B; however, the record is unclear whether these two disks were ever formally offered or accepted into evidence. The appellant now contends that it was plain error to allow the jury to take into the jury room items that had not been formally admitted into evidence.

[¶ 24] The appellant did not object to allowing the jury to listen to the recorded interview in the deliberation room, so we again review the alleged error under the plain error standard. And once again, the prejudice prong of that test is the quickest route to a determination of the issue. Because we have already found no prejudice resulting from the jury hearing the recorded interview, it would be difficult to conclude that prejudice occurred when the jury was allowed to take the disks into the deliberation room. This is especially true where, as here, the linchpin of the appellant's defense was the allegedly overbearing demeanor of the officers during the interview and the resultant involuntary confession.

*Whether plain error occurred when the State elicited in its case-in-chief that the principal pled guilty to attempted second-degree murder?*

[¶ 25] In her final argument, the appellant contends that error occurred when the prosecutor questioned J.D. regarding the fact that he pled guilty to attempted second-degree murder for the attempt to kill Cali. The appellant points to the rule set forth in *Kwallek v. State,* 596 P.2d 1372, 1375–76 (Wyo.1979), where we said

**220**

when two persons are indicted for separate offenses growing out of the same circumstance, the fact that one has pleaded guilty is inadmissible against the other. See, Wharton, Criminal Evidence, 12th Ed., § 439. This is so because competent evidence against one person charged with an offense is not necessarily admissible against another charged with the same offense. Furthermore, each person charged with an offense must be tried upon evidence tending to show his guilt or innocence. 48 A.L.R.2d p. 1017. For a prosecutor to argue or elicit testimony disclosing that another has pleaded guilty is to argue from facts either not in evidence or facts which are inadmissible in evidence. In *State v. McCarthy*, Mo.App., 567 S.W.2d 722 (1978), the rationale of the rule holding the admission of such evidence to be prejudicial error is said to be that it is irrelevant and incompetent because it suggests that since the confederate is guilty, the defendant must also be guilty, and this inference violates the defendant's right to have his trial on its own merits.

(Footnote omitted.)

[¶ 26] The appellant contends that this rule was violated when the following exchange occurred:

[Prosecutor]: Now, you were initially charged with attempted first degree murder, is that right?

[J.D.]: Yes.

[Prosecutor]: Ultimately, there was a plea agreement in your case; is that right?

[J.D.]: It was, so I didn't have to go to trial.

[Prosecutor]: Okay. Ultimately, you pled guilty to attempted second degree murder; is that correct?

[J.D.]: Yes.

[Prosecutor]: There were some discussions about you receiving a benefit for your testimony against anybody else that might have been involved in that shooting; is that right?

[J.D.]: Yes.

[Prosecutor]: Can you tell the jury about those discussions, who you talked to and what was discussed?

[J.D.]: I talked to a detective and he said if I was to help them with [the appellant], that I would get three years off my thirty year sentence.

[Prosecutor]: The decision you made to plead guilty to attempted second degree murder, was that decision made by you before you agreed to testify against anybody else?

[J.D.]: Yes, I agreed to that so I didn't have to go to trial.

[Prosecutor]: And then after that, you were offered three years off your maximum sentence—

[J.D.]: Yes.

[Prosecutor]:—for any testimony you had?

[J.D.]: Yes. (Pause.)

[Prosecutor]: Okay. Now, you have a minimum sentence that was imposed; is that correct?

[J.D.]: Twenty-five.

[Prosecutor]: Actually, I think it reflects it was twenty years.

[J.D.]: I think—yeah, twenty or twenty-five.

[Prosecutor]: Okay. Did your cooperation in this case do anything to affect the minimum sentence that you have to serve?

[J.D.]: No.

[¶ 27] The State counters that the prosecutors did not violate the *Kwallek* rule because the appellant's attorney had already referred to J.D.'s plea agreement in his opening statement. The State specifically points to the following statement made by defense counsel:

[J.D.] was originally charged with accessory—or with attempted first degree murder, which is life in prison. A deal was made. "You tell us about everything you know, we'll take it down to second degree murder," which is twenty years to life. "Furthermore, if you testify about everything you tell us, we'll give you another three years off that." That's what he's doing here.

The State contends that in light of defense counsel's comments during his opening statement, the prosecutor's questions of J.D. during direct examination regarding his guilty

plea were proper. In support of this argument, the State cites the following language from *KP v. State*, 2004 WY 165, ¶ 18, 102 P.3d 217, 223 (Wyo.2004):

> The *Kwallek* rule precludes the State from presenting evidence of guilty pleas of accomplices in its case-in-chief under circumstances that might tend to implicate the defendant's guilt by association. In the case sub judice, the prosecutor never introduced evidence of guilty pleas of [the accomplices] for any reason other than to counter KP's claim of bias and his attacks on the credibility of [the accomplices]. The prosecutor never mentioned [the accomplices'] guilty pleas in her opening or closing statements and never argued that their guilty pleas in any manner reflected upon KP's guilt or innocence. The *Kwallek* rule was not violated.

*Id.*, 2004 WY 165, ¶ 18, 102 P.3d at 223. The State argues that defense counsel made it apparent that he would use J.D.'s plea agreement to impeach J.D.'s credibility by the manner in which he addressed it during his opening statement. The State asserts that the prosecutor did not present any argument concerning J.D.'s guilty plea in a manner that would imply the appellant's guilt, but rather addressed the plea agreement on direct examination solely to bolster J.D.'s credibility in response to the attack made by defense counsel's opening statement.

[¶ 28] We find the State's argument compelling. The nature and scope of the prosecutor's questions strongly indicate that his purpose in asking J.D. about his guilty plea was to respond to defense counsel's comments in his opening statement. The prosecutor stated: "There were some discussions about you receiving a benefit from your testimony against anybody else that might have been involved in that shooting; is that right?" and "Okay. Did your cooperation in this case do anything to affect the minimum sentence you have to serve?" These comments, and the fact that the prosecutor made no other statements regarding J.D.'s guilty plea in his opening statement or closing argument, convince us that the purpose of the questions was proper and not in violation of the *Kwallek* rule. This is a classic case of defense counsel having "opened the door" to this line of questioning. *See Lawrence v. State*, 2007 WY 183, ¶ 14, 171 P.3d 517, 521 (Wyo.2007); and *White v. State*, 2003 WY 163, ¶ 11, 80 P.3d 642, 648 (Wyo.2003).

[¶ 29] Furthermore, even if we were to conclude that the prosecutor's questions were improper under our prior application of the *Kwallek* rule, we would have difficulty concluding that prejudice arose from the admission of J.D.'s statements regarding his guilty plea. In *Urrutia v. State*, 924 P.2d 965 (Wyo.1996), the appellant asserted that the trial court had erred by allowing his co-conspirators to testify that they had pled guilty to the charges similar to those for which the appellant was on trial, and by allowing the prosecutor to use that evidence in closing argument. *Id.* at 969. Although we found that an unequivocal rule of law had been violated by the admission of the testimony regarding the co-conspirators' guilty plea, we concluded that the appellant failed to show that material prejudice had resulted. *Id.* at 970. We began our analysis of the prejudice prong of the plain error test by noting that the evidence was sufficient to support the convictions without the co-conspirators' statements about their guilty pleas. *Id.* We then compared the circumstances under which the testimony was elicited to those presented in *Kwallek*. *Id.* In *Kwallek*, we concluded that prejudice resulted when the jury's attention was inordinately directed to the improper evidence when the district court twice overruled defendant's objection to the admission of the evidence about the co-conspirator's guilty plea. We said:

> [T]he jury was left with the impression that, since the total evidence connected the defendant with [his co-conspirator] in the altercation with [the victim], the court must have wanted the jury to understand that, since [the co-conspirator] had pleaded guilty, it must be that the defendant is also guilty.

*Id.* (quoting *Kwallek*, 596 P.2d at 1376). We concluded in *Urrutia* that the jury was not left with such an impression because no objection to the evidence of the co-conspirators' guilty pleas were made. As such, the appel-

lant could not show material prejudice. *Urrutia*, 924 P.2d at 970.

[¶ 30]  The facts of this case relative to this issue are similar to those in *Urrutia*. In neither case was there an objection to the admission of the co-conspirators' testimony, and thus, little emphasis was placed upon that testimony.  Moreover, in both cases, even without the evidence of the co-conspirators' pleas, the evidence was clearly sufficient to support conviction.

## CONCLUSION

[¶ 31]  We conclude that the appellant failed in her burden of demonstrating that material prejudice resulted when the jury was allowed to hear the recorded police interview or when the jury was permitted to take the recording into deliberations.  Additionally, we find that no error of law occurred when the prosecutor questioned one of the appellant's co-conspirators concerning his guilty plea.  Affirmed.