# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 15

### OCTOBER TERM, A.D. 2019

**February 4, 2020**

SHANTELL ANN WYANT,

Appellant
(Defendant),

v.

S-19-0080

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
The Honorable Dawnessa A. Snyder, Judge

*Representing Appellant:*
Valerie Schoneberger, Schoneberger Law, P.C., Lander, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Russell Farr, Senior Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Shantell Ann Wyant was convicted by a jury of three counts of second-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303(a)(vii) (LexisNexis 2019).  She appeals from her convictions, arguing the district court plainly erred in failing to instruct the jury on the *mens rea* element of second-degree sexual assault.  Specifically, she claims that because second-degree sexual assault is a general intent crime, it required a voluntary act and, as a result, the district court erred in not instructing the jury it had to find her actions were voluntary.  We affirm.

## ISSUE

[¶2]    We restate the single issue as:

Did the district court plainly err in failing to instruct the jury that it had to find beyond a reasonable doubt that Ms. Wyant acted voluntarily?

## FACTS

[¶3]    In February 2015, Ms. Wyant was employed by the Wyoming Department of Corrections (WDOC) as a shipping and receiving clerk in the warehouse at the Wyoming State Penitentiary (WSP) in Rawlins, Wyoming.  While employed there, she began a sexual relationship with WSP inmate David Edgerson, who was assigned to work in the warehouse.  The relationship included Ms. Wyant performing oral sex on Mr. Edgerson (fellatio) once and having sexual intercourse with him twice.  All three acts occurred in the warehouse, in an area where the surveillance cameras were obscured by boxes.  In June 2015, Mr. Edgerson was transferred from WSP to a halfway house in Gillette, Wyoming.  Ms. Wyant traveled to Gillette on three separate occasions to see him.  Each time, Ms. Wyant and Mr. Edgerson had sexual intercourse in her hotel room.

[¶4]    The State charged Ms. Wyant with three counts of second-degree sexual assault in violation of § 6-2-303(a)(vii) based on the one act of fellatio and the two acts of sexual intercourse occurring at the warehouse.[1]  At trial, the jury was instructed that to find Ms. Wyant guilty of second-degree sexual assault, it had to find that:  1) between February 1, 2015 and July 31, 2017; 2) in Carbon County; 3) Ms. Wyant; 4) inflicted sexual intrusion (fellatio or sexual intercourse) on Mr. Edgerson; 5) Ms. Wyant was an employee of a state operated adult correctional system (WDOC); and 6) Ms. Wyant knew Mr. Edgerson was a resident of a facility within the system (WSP).  Ms. Wyant did not contest the dates or

_____

[1] Ms. Wyant was charged separately in Campbell County for the sexual conduct occurring in her hotel room in Gillette.  The district court, however, allowed the State to introduce evidence of this conduct at trial under Wyoming Rule of Evidence 404(b) for the purpose of establishing a course of conduct, opportunity, and identity.  Ms. Wyant does not challenge the Rule 404(b) ruling in this appeal.

1

location of the offenses, that the sexual conduct occurred, that she was a WDOC employee, or that she knew Mr. Edgerson was a WSP resident. Her defense was she did not "inflict anything on Mr. Edgerson," but rather he was a "wolf" who took advantage of her weaknesses for his own sexual gratification.[2] The jury found Ms. Wyant guilty of all three counts. The district court sentenced her to three concurrent terms of 3-6 years in prison, suspended in favor of three years of supervised probation. Ms. Wyant appeals from the judgment.

## DISCUSSION

[¶5]    Ms. Wyant argues the district court erred in not instructing the jury that it had to find beyond a reasonable doubt that her actions were voluntary. She concedes plain error review applies because she did not object to the failure to provide a voluntariness instruction. *Granzer v. State*, 2008 WY 118, ¶¶ 18-19, 193 P.3d 266, 271-72 (Wyo. 2008). *See also, Sindelar v. State*, 2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018); *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 10, 344 P.3d 782, 786 (Wyo. 2015) ("Failure to object constitutes waiver of whatever alleged error occurred, unless the error rises to the level of plain error." (citing W.R.A.P. 9.05)). To satisfy the plain error standard, Ms. Wyant must show "1) the record is clear about the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) [s]he was denied a substantial right resulting in material prejudice." *Sindelar*, ¶ 16, 416 P.3d at 768 (citing *Johns v. State*, 2018 WY 16, ¶ 12, 409 P.3d 1260, 1264 (Wyo. 2018)). Because the allegedly deficient jury instructions clearly appear in the record, the first prong of plain error review is satisfied. Ms. Wyant, however, has not satisfied her burden on the second or third prongs.

### *Clear and Unequivocal Rule of Law*

[¶6]    Wyo. Stat. Ann. § 6-2-303(a)(vii) provides in relevant part:

> (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under

---

[2] The district court gave the jury the theory of defense instruction requested by Ms. Wyant:

> The defendant asserts she did not inflict sexual intrusion on David Edgerson. The State must prove beyond a reasonable doubt that sexual intrusion was inflicted on David Edgerson. This is a matter the jury must decide based on all the facts and circumstances of the case. The law requires that the sexual intrusion must be inflicted. If the State fails to prove beyond a reasonable doubt that Ms. Wyant inflicted sexual intrusion, then you must find her not guilty.

However, over Ms. Wyant's objection, the court informed the jury that "[t]here is no distinction between the terms 'inflicts' and 'engages in' as it applies to sexual assault in the second degree." Ms. Wyant does not challenge these instructions on appeal.

circumstances not constituting sexual assault in the first
degree:

. . .

(vii) The actor is an employee . . . of a state,
county, city or town, or privately operated adult . . .
correctional system . . . and the victim is known or should be
known by the actor to be a resident of [a correctional system]
facility or under supervision of the correctional system[.]

"Sexual intrusion" includes "[s]exual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission." Wyo. Stat. Ann. § 6-2-301(a)(vii)(B) (LexisNexis 2017).

[¶7]    Ms. Wyant argues § 6-2-303(a)(vii) is a general intent crime which required the State to show she undertook the prohibited act voluntarily. As a result, she claims the district court erred in not instructing the jury that voluntariness is an element of the charged crimes. She contends such error transgressed a clear and unequivocal rule of law because case law requires juries to be instructed on a crime's elements.

[¶8]    We agree second-degree sexual assault under § 6-2-303(a)(vii) is a general intent crime because its definition "'consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence . . . .'" *See Kite v. State*, 2018 WY 94, ¶ 23, 424 P.3d 255, 263 (Wyo. 2018) (quoting *Sam v. State*, 2017 WY 98, ¶ 69, 401 P.3d 834, 857 (Wyo. 2017)). *See also, Cox v. State*, 829 P.2d 1183, 1185 (Wyo. 1992) ("[O]nly those crimes which refer to an intent to do a further act or achieve a future consequence are specific intent crimes."). We disagree, however, that the district court's failure to instruct the jury on voluntariness violated a clear and unequivocal rule of law. *Causey v. State*, 2009 WY 111, ¶¶ 14, 20, 215 P.3d 287, 292-94 (Wyo. 2009) (to satisfy the second prong of plain error review, the error must be so "plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue").

[¶9]    Ms. Wyant relies on *Seymore v. State*, 2007 WY 32, 152 P.3d 401 (Wyo. 2007) (abrogated on other grounds by *Granzer*, ¶¶ 13-19, 193 P.3d at 270-72)), for the proposition that the district court's failure to instruct the jury on voluntariness violated a clear and unequivocal rule of law.[3] Mr. Seymore was convicted by a jury of escape under Wyo. Stat.

---

[3] Ms. Wyant also relies on various cases for the propositions that when a criminal statute is silent with respect to a *mens rea*, one will be inferred; that intent is a question of fact for the jury; that general intent crimes require, at a minimum, that the defendant acted voluntarily; and a judge must instruct the jury as to the elements of a crime. None of the cases relied upon, however, with the exception of *Seymore*, addressed, let alone decided, whether a district court must always instruct the jury that it has to find the defendant acted voluntarily in order to convict her of a general intent crime. *See Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001, 2004, 2010-11, 192 L.Ed.2d 1 (2015) (concluding a jury instruction was erroneous in

Ann. 6-5-206(a) (LexisNexis 2019) for failing to return to a community corrections facility at the scheduled time. *Seymore*, ¶¶ 2-4, 152 P.3d at 403. On appeal, he argued the jury instructions were erroneous because they failed to inform the jury that escape is a specific intent crime requiring him to have "specifically intended to 'evade the course of justice' by 'avoiding confinement.'" *Id.*, ¶¶ 13-14, 152 P.3d at 405-06. We rejected that argument because escape is a general intent crime. *Id.*, ¶ 14, 152 P.3d at 406. We went on to conclude, however, that the instructions were inadequate because they failed to require the jury to find that Mr. Seymore voluntarily failed to return to the community corrections facility on time. *Id.*, ¶ 15, 152 P.3d at 406. "[W]ithout voluntary conduct, there is no *mens rea*. No crime has been committed, for instance, if an adult community corrections resident fails to return to the facility because of disabling injuries suffered in an automobile accident or a natural calamity." *Id.*

[¶10] In concluding the district court's failure to instruct on voluntariness was error, *Seymore* relied on the following statement from *Reilly v. State*, 2002 WY 156, ¶ 8, 55 P.3d 1259, 1262 (Wyo. 2002), which was quoted from *Dorador v. State*, 573 P.2d 839, 843 (Wyo. 1978): "When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, ***the trial judge asks the jury whether the defendant intended to do the outlawed act.***" *Seymore*, ¶ 15, 152 P.3d at 406-07 (emphasis added). Ms. Wyant relies on this same statement to support her claim the district court erred in failing to provide the jury a voluntariness instruction. *Seymore* and Ms. Wyant take this broad statement out of context. *Dorador* harkens back to the days when district courts were required to provide instructions defining general and specific intent, including that the defendant knowingly

---

a prosecution for transmitting in interstate or foreign commerce a communication containing any threat to kidnap or injure a person because the instruction required only negligence with respect to the communication; although the statute of conviction did not explicitly contain a *mens rea* and one will generally be inferred in such circumstances, the Court has "long been reluctant to infer that a negligence standard was intended in criminal statutes"); *Morissette v. United States*, 342 U.S. 246, 274-76, 72 S.Ct. 240, 255-56, 96 L.Ed. 288 (1952) (concluding a federal criminal statute prohibiting the knowing conversion of criminal property contains an implied *mens rea* and rejecting the notion that criminal intent may be presumed by the trial court based on the mere fact the defendant took the subject property as such issue is one for the jury); *Jones v. State*, 2011 WY 114, ¶ 11, 256 P.3d 527, 532 (Wyo. 2011) (concluding district court's elements instruction on the crime of larceny was erroneous because it omitted the elements of "taking" and "carrying"); *Reilly v. State*, 2002 WY 156, 55 P.3d 1259 (Wyo. 2002) (rejecting defendant's argument that attempted second degree murder is a "logical impossibility" because one cannot attempt a general intent crime). *See also, Causey*, ¶¶ 14, 20, 215 P.3d at 292-94 (concluding the defendant failed to show the district court's failure to instruct the jury on the legal definition of "provokes the conflict" to be "an obvious transgression of any clear and unequivocal rule of law" because he failed to cite "any Wyoming case establishing a clear-cut rule of law that the jury must be instructed on a specialized legal definition of provocation. Instead, he relies on a detailed analysis of self-defense cases dating back eighty years. None of those cases directly raised the question of how or whether a jury should be instructed on the definition of provocation. Instead, they dealt with related issues such as the duty of an aggressor to retreat . . . or the sufficiency of the evidence to support an instruction on aggression and provocation.").

performed an act which the law forbids and defined knowingly as "voluntarily and intentionally, and not because of mistake or accident or other innocent reason." *Reilly*, ¶ 9 n.1, 55 P.3d at 1262 n.1. We have since acknowledged such instructions are unnecessary due to their "vagueness and general failure to enlighten juries." *Compton v. State*, 931 P.2d 936, 941 (Wyo. 1997). *See also, Keats v. State*, 2003 WY 19, ¶ 11-13, 64 P.3d 104, 107-08 (Wyo. 2003) (concluding the district court did not err in refusing to provide the jury the defendant's requested instruction defining specific intent which mirrored former pattern criminal instruction 3.504 because the jury was properly instructed as to the intent element of first-degree arson, pattern instruction 3.504 no longer existed, and we had since acknowledged a trend in the law to dispense with such instructions as vague and unhelpful to the jury).

[¶11] Moreover, *Seymore* explicitly limited its holding to its facts—a failure to return to custody resulting in a charge of escape under § 6-5-206(a). *Seymore*, ¶ 15, 152 P.3d at 406 ("The law of intent, *as applied to the facts of this case*, required the State to prove that the appellant voluntarily failed to return to [the correctional facility] at the required time." (emphasis added)). We have never extended *Seymore* beyond those facts. *See Six v. State*, 2008 WY 42, ¶¶ 12-21, 180 P.3d 912, 917-19 (Wyo. 2008) (applying *Seymore* to escape conviction). We decline to do so here.

[¶12] The weight of authority from other states shows a voluntariness instruction is not necessary unless there is evidence suggesting the defendant's conduct was not voluntary. *State v. Almaguer*, 303 P.3d 84, 91 (Ariz. Ct. App. 2013) ("An instruction that the state must prove the defendant committed a voluntary act is appropriate only if there is evidence to support a finding of bodily movement performed unconsciously and without effort and determination . . . ."); *State v. Pierson*, 514 A.2d 724, 728 (Conn. 1986) ("Our acknowledgement of the fundamental principle that a criminal act must be volitional does not mean that a charge to a jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary and he has made no such claim either in the trial court or on appeal."); *Baird v. State*, 604 N.E.2d 1170, 1176 (Ind. 1992) ("In most cases there is no issue of voluntariness and the State's burden is carried by proof of commission of the act itself. However, once evidence in the record raises the issue of voluntariness, the state must prove the defendant acted voluntarily beyond a reasonable doubt."). *See also*, 21 Am. Jur. 2d *Criminal Law* § 119 ("Voluntariness of criminal conduct is not a fact that the state must prove in every case; rather, the state need not prove voluntariness unless the evidence raises the issue, in which case the state must disprove involuntariness beyond a reasonable doubt."). In this case, as we explain below, Ms. Wyant did not claim, and the evidence did not suggest, her actions were not voluntary.

[¶13] Ms. Wyant has failed to show the district court's failure to provide a voluntariness instruction transgressed a clear and unequivocal rule of law.

*Denial of Substantial Right Resulting in Material Prejudice*

[¶14]  Ms. Wyant claims she was prejudiced by the district court's failure to instruct on voluntariness because the evidence showed she did not voluntarily engage in sexual contact with Mr. Edgerson "but rather was under psychological pressures to fulfill her need for companionship and emotional support."  She relies on her testimony, which she says showed "she engaged in sexual contact with [Mr. Edgerson] not for sexual gratification but to feel whole, to feel [his] love and passion and for his companionship," as well as a letter submitted to the court after trial by a juror as evidence that had the jury been properly instructed, the outcome of the trial would have been different.  In the letter, the juror sought leniency for Ms. Wyant and referred to Mr. Edgerton as the "predator" and Ms. Wyant as the "prey."

[¶15]  "'To establish prejudice [under plain error review], the appellant must show a reasonable probability that [she] would have received a more favorable verdict in the absence of the error.'" *Sindelar*, ¶ 20, 416 P.3d at 770 (quoting *Pendleton v. State*, 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo. 2008)).  "We will not find prejudice when the jury is [allegedly] incorrectly instructed on an element of the crime if 'the element [was] not contested at trial or [the] evidence of the defendant's guilt is overwhelming.'" *Weston v. State*, 2019 WY 113, ¶ 37, 451 P.3d 758, 768 (Wyo. 2019).  Ms. Wyant did not contest the voluntariness of her actions, and the evidence of the voluntariness of her actions, and thus of her guilt, was overwhelming.[4]

[¶16]  Ms. Wyant testified she was in a "bad spot" when she met Mr. Edgerson—she was recovering from a methamphetamine addiction, she had recently left an "extremely abusive" relationship, and a best friend had recently committed suicide, all of which left her feeling "extremely lonely and depressed" and that she "wasn't good enough."  She told the jury Mr. Edgerson made it easier for her to go to work because she "had somebody to talk to, . . . somebody who listened."  She claimed Mr. Edgerson encouraged her to stay sober, did not judge her, made her feel better about her body, and told her she was beautiful, had pretty eyes, and was a good mother and person, which made her feel special and whole.  She explained that she did not think she was going to have sex with him when they first met but eventually changed her mind.  She testified she was afraid of the legal consequences of having sex with him and afraid that if she did not have sex with him, he would "[find] it elsewhere."  She also testified she had sex with him because she "needed to" and "wanted to feel his passion and his love."

[¶17]  This testimony does not suggest Ms. Wyant did not act voluntarily.  *Hopkins v. State*, 2019 WY 77, ¶ 9, 445 P.3d 582, 586 (Wyo. 2019) ("An act is voluntary if the actor intended to do it (as opposed to an event occurring accidentally or involuntarily).  (citation

---

[4] Again, Ms. Wyant did not contest the dates or locations of the offenses, that the sexual conduct occurred, that she was a WDOC employee, or that she knew Mr. Edgerson was a WSP resident.

omitted))".  *See also*, 21 Am. Jur. 2d *Criminal Law* § 119 ("To constitute 'voluntary conduct' for which a person can be held criminally liable, the act in question must be the result of the exercise of the defendant's conscious choice to perform it, and not the result of reflex, convulsion, or other act over which a person has no control.").  Rather, it shows her motive for acting as she did.  "Motive is different than intent."  *Swett v. State*, 2018 WY 144, ¶ 39, 431 P.3d 1135, 1146 (Wyo. 2018) ("[M]otive is generally defined as that which leads or tempts the mind to indulge in a particular act.  It is distinguishable from intent, which is the purpose to use a particular means to effect a . . . result.  Motive may often be an emotion that would provoke or lead to the commission of a criminal offense." (citations and quotations omitted)).  *See also, Mitchell v. State*, 865 P.2d 591, 597 (Wyo. 1993) ("[M]otive [is] the 'reason that nudges the will and prods the mind to indulge the criminal intent,' an 'inducement or state of feeling that impels and tempts the mind to indulge in a criminal act', and 'the moving force which impels to action for a definite result.'  While intent accompanies the actus reus, the motive comes into play before the actus reus.  The motive is a cause, and the actus reus is the effect.") (quoting Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 3.15 at 35-36 (1992 & Supp. 1993)).

[¶18]  Ms. Wyant also ignores other pertinent parts of her testimony, which show her actions were voluntary.  She admitted (both at trial and in her investigative interview, which was videotaped and played for the jury) that she was told during training that she could not have personal relationships with the inmates and that she knew what she was doing was wrong.  Yet she "chose" to violate the rules.  She also admitted to the jury that Mr. Edgerson never threatened or forced her to have sex with him and it was consensual.[5]  Indeed, she told the jury Mr. Edgerson's mom had warned her not to become involved with Mr. Edgerson because she would get "in trouble," but she did not listen to that advice.  Instead, she "chose" to have sexual relations with Mr. Edgerson because she "needed to."

[¶19]  During her investigatory interview, Ms. Wyant agreed to write an apology letter to the warden.  In that letter, which was submitted to the jury, she apologized to the warden for her "behavior and for letting [her] guard down."  It continued:

> Getting involved in a relationship with inmate David Edgerson was a huge mistake.  I was in a bad spot in my life and he said all the "right" things.  I went against everything I believed in and everything I know is right.  I should have never let my guard down.  I was manipulated.  I'm embarrassed for my actions.  I have two daughters at home that need me to provide and teach them right from wrong and I let them down.  I let the whole institution down by my actions.  I made a huge mistake

---

[5] The jury was instructed that "consensual sexual intrusion is not an affirmative defense to the criminal charges of sexual assault in the second degree, as charged herein."  The fact Ms. Wyant admitted the sexual conduct with Mr. Edgerson was consensual is relevant, however, to whether her actions were voluntary.

sir. I can promise you this will never happen again. I didn't know what a huge mistake I had made until I was already involved. If I could go back to the day I would change everything. I am so sorry. I am embarrassed and ashamed. *The relationship we had was consensual*, and I should have known better. I am sorry for letting myself down but more importantly I am sorry for letting you and my co-workers down . . . .

(Emphasis added). While she provides excuses for her actions, she nevertheless admits they were "consensual." Nothing in the letter demonstrates her actions were involuntary.

[¶20] Other evidence demonstrated the voluntariness of her actions. Ms. Wyant set up a Google Voice account number in Mr. Edgerson's cousin's name and Mr. Edgerson had that name and account number placed on his approved telephone contact list. This account allowed Ms. Wyant to converse with Mr. Edgerson while he was housed at WSP. She also placed money on his WSP account. After Mr. Edgerson was transferred to the halfway house in Gillette, Ms. Wyant purchased a cell phone for him so they could talk. She also admitted to traveling from Rawlins to Gillette and securing a hotel room so she could see him and have sex with him.

[¶21] Ms. Wyant relies on the juror's letter to establish she was prejudiced. Her reliance on that letter is misplaced for two reasons. First, we look to the trial record to decide whether a defendant has been prejudiced, i.e., whether there is a reasonable probability the defendant would have received a more favorable verdict had the error not occurred. *See, e.g., Weston*, ¶¶ 38-40, 451 P.3d at 768-69; *Dixon v. State*, 2019 WY 37, ¶¶ 32-34, 438 P.3d 216, 230 (Wyo. 2019). The juror's letter in this case was not admitted at trial and, in fact, was sent to the district court after the trial. Second, even assuming the letter is relevant to the prejudice analysis, it does not demonstrate Ms. Wyant was prejudiced by any failure to instruct on voluntariness. The juror asked for leniency for Ms. Wyant because, according to the juror, it was clear from the evidence that Mr. Edgerson was the "predator" and Ms. Wyant the "prey." She explained:

> The predator, Mr. Edgerson, saw a woman in a vulnerable and emotionally weakened condition and with his manipulative skill he bent her to his will using flattery and his children to gain her trust. This was for his own gratification without genuine regard for her, her position or the potential consequences to her. She was just a means to his selfish desires as were the next women he became involved with. To him his consequences were no "big deal." The penal system is neither a deterrent nor punishment for him.

8

Importantly, the juror went on: "I understand that Ms. Wyant made *a choice, not a mistake, but a very bad choice*. Based on a very human need to feel worthwhile, to be of value, to feel better about oneself." Making a choice, even a bad one, indicates voluntary action.

[¶22] Ms. Wyant has not shown she was prejudiced by any alleged failure to provide a voluntariness instruction to the jury. Further, she did not present any evidence suggesting her actions were not voluntary. Consequently, no instruction on voluntariness was required.

## CONCLUSION

[¶23] The district court did not plainly err in failing to instruct the jury that it had to find Ms. Wyant acted voluntarily in order to convict her of second-degree sexual assault.

[¶24] Affirmed.