2008 WY 42

**Brent Lee SIX, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0199.**

Supreme Court of Wyoming.

April 9, 2008.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Appellant, Brent Lee Six (Six), appeals from the district court's judgment and sentence which found him guilty of escape. Six contends that the State erred in failing to afford him an initial appearance within 72 hours of his arrest, as required by W.R.Cr.P. 5(a), and that circumstance requires dismissal of the charges against him.   In addition, he contends that the district court erred in instructing the jury as to the intent element of the crime of escape, and that error requires reversal of his conviction.   We will affirm.

## ISSUES

[¶ 2]   Six states these issues:

I.   Did the failure to afford Brent Six an initial appearance within 72 hours of arrest constitute a violation of W.R.Cr.P. 5(a) and warrant a dismissal of the case?

II.   Did the trial court err in failing to include intent as an element of escape?

The State contends:

I.   Was [Six] arrested for the crime of escape on October 25, 2006, and therefore denied his rights under W.R.Cr.P. 5, or was he simply transferred to the sheriff's custody pursuant to Wyo. Stat. Ann. § 7–18–113, due to a violation of the conditions

of his placement at a community correctional facility?

II.  Did the trial court fail to properly instruct the jury on intent as an element of escape?

## FACTS AND PROCEEDINGS

[¶ 3]  On October 25, 2006, Six was a transitional inmate in the custody of the Wyoming Department of Corrections and was housed at Community Alternatives of Casper (CAC).

[¶ 4]  Wyo. Stat. Ann. § 7–18–110 (Lexis-Nexis 2007) provides:

§ 7–18–110.  **Authority of department of corrections to contract for services.**

(a) Subject to legislative appropriation, the department may, by negotiation without competitive bids or by competitive bidding, contract with any community corrections board created under this act, to provide services for:

(i) Convicted felony offenders ordered by a sentencing court to participate in adult community correctional facilities or programs as a condition of probation;

(ii) **Inmates transferred to a residential adult community correctional facility by the department pursuant to W.S. 7–18–109;** or

(iii) Parolees required to participate in a residential or nonresidential adult community correctional program as a condition of parole pursuant to W.S. 7–18–115.

(b) No inmate, parolee or offender shall be deemed to be a third party beneficiary of, or to be otherwise entitled to enforce any provision of, any contract entered into under subsection (a) of this section.  [Emphasis added.]

Six was transferred to CAC by the Department of Corrections under Wyo. Stat. Ann. § 7–18–109 (LexisNexis 2007):

§ 7–18–109.  **Transfer of inmate to facility by department.**

(a) Subject to subsection (b) of this section, and upon recommendation of the warden or superintendent of the institution, the department may transfer an adult inmate to a residential adult community correctional facility.

(b) A transfer of an inmate to a residential adult community correctional facility under this section may be made only if:

(i) The department determines the inmate poses a low risk of escape or violence;

(ii) The inmate is eligible under W.S. 7–18–102(a)(iii);

(iii) The inmate is within at least twenty-four (24) months of his parole eligibility date and his conduct during his confinement has been such that he is appropriate for placement;

(iv) The residential adult community correctional facility is operated under a contract with a corrections board and the corrections board has contracted with the department to provide services which include placement of pre-parole inmates;

(v) The inmate has been accepted by the corrections board;

(vi) Funding for the placement is available; and

(vii) The department determines the correctional needs of the inmate will be better served by the transfer.

(c) Prior to the placement of an inmate in any nongovernmental adult community correctional facility, the department shall notify or cause to be notified the law enforcement agencies of affected units of local government concerning the identity of the inmate to be placed.

(d) No inmate shall be transferred to a residential adult community corrections facility under this section unless he agrees in writing to abide by the regulations of the program provider and any additional conditions imposed by the department.  **Approval of a transfer under this section is not a discharge of the inmate but shall be construed as an extension of the limits of confinement of the institution to which the inmate was committed.**  The department may revoke the approval of the transfer of an inmate under this section at any time for violation by the inmate of any conditions of the placement.  Upon

revocation the inmate shall be returned to the physical custody of the department.

(e) The probation and parole officers for the judicial district shall have general supervisory authority over all inmates in adult community correctional facilities or programs under this section. [Emphasis added.]

[¶ 5] The underlying facts that constitute the escape charge are not in dispute and we set them out only briefly for purposes of background and context. At 7:10 a.m., on October 25, 2006, Six left CAC to go to work. When he arrived at work, he was fired because he had not shown up for work the preceding day and had not called to say he was not coming to work. He then returned to CAC but did not sign himself back into the facility. Instead, he picked up another inmate and left. At 3:00 p.m. that same day, Six returned to CAC and was transferred to the custody of the Natrona County Sheriff pending review of his case under Wyo. Stat. Ann. § 7–18–113 (LexisNexis 2007), which provides:

### § 7–18–113. Confinement of violators.

If the administrator of an adult community correctional facility or any other appropriate supervising authority has cause to believe that an offender, parolee or inmate placed in an adult community correctional facility has violated any rule or condition of that person's placement in that facility or any term of post-release supervision or cannot be safely housed in that facility, the administrator or other authority shall certify to the department the facts which are the basis for the belief and execute a transfer order to the sheriff of the county in which the facility is located, who shall confine the offender, parolee or inmate in the county jail pending a determination by the appropriate judicial or executive authorities as to whether or not the offender, parolee or inmate shall remain in community corrections.

[¶ 6] Wyo. Stat. Ann. § 7–18–112 (LexisNexis 2007) provides:

### § 7–18–112. Escape.

(a) An offender, parolee or an inmate is deemed guilty of escape from official detention and shall be punished as provided by W.S. 6–5–206(a)(i) if, without proper authorization, he:

(i) Fails to remain within the extended limits of his confinement or to return within the time prescribed to an adult community correctional facility to which he was assigned or transferred; or

(ii) Being a participant in a program established under the provisions of this act he leaves his place of employment or fails or neglects to return to the adult community correctional facility within the time prescribed or when specifically ordered to do so.

[¶ 7] Wyo. Stat. Ann. § 6–5–206(a)(i) (LexisNexis 2007) provides:

### § 6–5–206. Escape from official detention; penalties.

(a) A person commits a crime if he escapes from official detention. Escape is:

(i) A felony punishable by imprisonment for not more than ten (10) years, if the detention is the result of a conviction for a felony;

(ii) A felony punishable by imprisonment for not more than three (3) years, a fine of not more than three thousand dollars ($3,000.00), or both, if the detention is the result of:

(A) A conviction for a misdemeanor; or

(B) An arrest or charge for a crime.

As used in the above statute, "official detention" means "arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. 'Official detention' does not include supervision on probation or parole or constraint incidental to release on bail[.]" Wyo. Stat. Ann. § 6–5–201(a)(ii) (LexisNexis 2007). An arrest warrant for the crime of escape was issued on November 8, 2006, and Six was given an initial appearance that same day. Because it was the State's intent to try Six for the escape, he was maintained in the county jail, rather than being returned to the state penitentiary.

## DISCUSSION

### Failure to Provide Initial Appearance

[¶ 8] We review the construction of rules of procedure in the same manner and under the same standards as we do statutes, i.e., they present questions of law that we review *de novo*. *Bixler v. Oro Management, LLC*, 2006 WY 140, ¶ 5, 145 P.3d 1260, 1262 (Wyo.2006). Although the district court made some very brief findings, they were in the nature of applying undisputed facts to the applicable law. Thus, we are not called upon to review the district court's factual findings under the usual clearly erroneous standard.

[¶ 9] Six contends that the failure of the State to provide him with an initial appearance requires reversal of his conviction for escape from the CAC. W.R.Cr.P. 5(a) provides:

(a) *Initial appearance before a judicial officer.*—A person arrested and in custody shall be taken without unnecessary delay before a judicial officer of the court from which the warrant issued or if no warrant has issued before a judicial officer of the court where the charging document will be filed. A person arrested without a warrant shall be released from custody unless probable cause for the arrest is established to the satisfaction of a judicial officer without unnecessary delay, but in no more than 72 hours. When a person arrested without a warrant is brought before a judicial officer an information or citation shall be filed at or before the initial appearance and, unless a judicial officer has previously found probable cause for the arrest, probable cause shall be established by affidavit or sworn testimony. When a person, arrested with or without a warrant or given a summons, appears initially before the judicial officer, the judicial officer shall proceed in accordance with the applicable subdivision of this rule.

[¶ 10] Six was moved from the CAC to the county jail on October 25, 2006. It appears that he was released on bond of $10,000.00 (cash or corporate surety) on November 8, 2006. His preliminary hearing was held on November 16, 2006. On December 27, 2006, Six appeared before the district court for arraignment. On January 25, 2007, Six filed a motion to dismiss the charge against him on the basis that he had not had a speedy initial hearing. In that pleading he did not cite any pertinent authority or make any cogent argument in support of his position. On February 6, 2007, the State responded to that motion, asserting that W.R.Cr.P.5(a) did not apply to the circumstances of Six's case, and that Six was properly and legally incarcerated, as the sentence that he was then serving would not be completed until February 27, 2007. The district court held a hearing on February 22, 2007, and by order entered of record on March 13, 2007, the district court denied Six's motion, stating that the extreme remedy of dismissal was not warranted in his circumstances.

[¶ 11] In this appeal, Six attempts to liken his circumstances to the authority that we have applied in cases involving violation of the right to a speedy trial. We conclude that such an argument by analogy simply will not stand up in the face of the statutes that governed Six's status as an "inmate" already incarcerated, or in light of the purposes of Rule 5(a) itself, i.e., that persons not be incarcerated for more than 72 hours without there being judicial intervention made available. See *Cherniwchan v. State*, 594 P.2d 464, 466 (Wyo.1979); 1 Wright & Leipold, *Federal Practice and Procedure* Criminal 4th § 72 (2008) (e.g., statements obtained after significant delay may be suppressed; however *Miranda* warnings are the "more robust doctrine for regulating confessions;" such delay may give rise to civil liability; initial burden is on defendant; and undue delay may be explained by circumstances). Although Six concedes that there is no authority that requires dismissal with prejudice in these circumstances, he argues that his analogy should at least require dismissal without prejudice. However, we decline to embrace that argument because we deem it to be a doctrine that applies to persons newly incarcerated and not those whose incarceration has merely undergone a geographic change and/or a change in the degree of incarceration. There may be circumstances where such changes warrant an internal, adminis-

trative-type hearing or procedure, but not an initial appearance before a judicial officer under Rule 5(a).

## Jury Instructions

[¶ 12] Six contends that the district court erred in instructing the jury and that he raised an objection to the form of the instructions in the district court. Specifically at issue are Instructions 10, 12 and 13. In a case quite similar to the one at bar, *Seymore v. State*, 2007 WY 32, ¶ 9, 152 P.3d 401, 404–5 (Wyo.2007), we iterated the standard of review to be applied in circumstances such as those presented here:

> We have a well-established standard for the review of jury instructions, which standard incorporates the test to be applied when there was no trial objection:
>
> > Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.
>
> *Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001) (citing *Schmidt v. State*, 2001 WY 73, ¶ 23, 29 P.3d 76, 83 (Wyo.2001) and *Metzger v. State*, 4 P.3d 901, 908 (Wyo.2000)). We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo.2001). We give trial courts great latitude in instructing juries and "'will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial.'" *Id.* (quoting *Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997)). *Brown v. State*, 2002 WY 61, ¶ 9, 44 P.3d 97, ¶ 9 (Wyo.2002).

Finally, we have indicated that when an appellant does not object at trial to the jury instructions, or request that a certain instruction be included, our review of this issue follows our plain error standard:

> First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.
>
> *Ogden v. State*, 2001 WY 109, ¶ 9, 34 P.3d 271, ¶ 9 (Wyo.2001) (quoting In *Interest of CB*, 749 P.2d 267, 268–69 (Wyo. 1988)); see also *Brown*, ¶ 10.

*Leyva v. State*, 2005 WY 22, ¶ 8, 106 P.3d 873, 876 (Wyo.2005).

[¶ 13] In *Seymore*, we considered the question of informing the jury of the mens rea element of the crime of escape, holding:

> The instructions were inadequate ...: "even a general intent crime requires a showing that the prohibited conduct was undertaken voluntarily." *Rowe v. State*, 974 P.2d 937, 939 (Wyo.1999) (citing *Crozier v. State*, 723 P.2d 42, 52 (Wyo.1986)). The law of intent, as applied to the facts of this case, required the State to prove that the appellant voluntarily failed to return to FCS at the required time. Unfortunately, the jury was not instructed that it had to find the failure to return to have been voluntary. Without voluntary conduct, there is no mens rea. No crime has been committed, for instance, if an adult community corrections resident fails to return to the facility because of disabling injuries suffered in an automobile accident or a natural calamity. As we stated in *Reilly*, quoting from *Dorador*, "[w]hen the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant

intended to do the outlawed act." *Reilly,* 2002 WY 156, ¶ 8, 55 P.3d at 1262 (quoting *Dorador v. State,* 573 P.2d 839, 843 (Wyo. 1978)) (emphasis added). That was not done in this case, and we have repeatedly stated that it is fundamental error requiring reversal for a trial court to fail to instruct on an essential element of the charged crime. *Leyva,* 2005 WY 22, ¶ 8, 106 P.3d at 876; *Lapp v. State,* 2004 WY 142, ¶ 10, 100 P.3d 862, 865 (Wyo.2004); *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001); and *Compton,* 931 P.2d at 940.

*Seymore,* ¶ 15, 152 P.3d at 406–407.

[¶ 14] Six proffered these objections to the instruction at trial:

[DEFENSE COUNSEL]: ...

The Court [has] included Instruction Number 12 and Instruction Number 13 into the packet. Specifically, I believe Number 12 obviously is not a pattern instruction, nor do I think that it necessarily states the law, the correct law, out of that particular case [*Seymore* ]. And with respect to Number 13, I agree—my only objection is that it is not a pattern instruction. Thank you.

THE COURT: And, actually, you've tendered an instruction which I've marked defendant's A; and it is similar to 12, but it says fail to return within the required time. And you tendered that, and I marked that "Refused."

[¶ 15] The district court agreed that Instructions 12 and 13 were not pattern instructions, but deemed them to be accurate statements of the law under *Seymore,* given the facts and circumstances of Six's case.

[¶ 16] Instruction No. 10 read:

**YOU ARE INSTRUCTED** that the elements of the crime of Escape from Official Detention, as charged in this case, are:

1. [O]n or about the 25th day of October, 2006;

2. In Natrona County, Wyoming;

3. The Defendant, Brent Six;

4. Escaped by failing to remain within the extended limits of his confinement without proper authorization;

5. [S]aid confinement being the result of a felony conviction.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 17] Instruction No. 12 read:

Intent, as applied to the facts of this case, requires that the State prove that the appellant [sic] voluntarily failed to remain within the extended limits of his confinement.

[¶ 18] Instruction No. 13 read:

YOU ARE INSTRUCTED THAT an act is done voluntarily if it is done knowingly or intentionally and not because of mistake or accident or other innocent reason.

[¶ 19] In Instruction No. 1, the jury had been told that it must read the instructions as a whole and to read each in the light of the others.

[¶ 20] The instruction offered by Six was this:

Intent, as applied to the facts of this case, requires that the State prove that the appellant [sic] voluntarily failed to return to the Community Alternatives of Casper facility at the required time.

[¶ 21] Based upon the objections contained in the record, as we analyze these instructions, and the objections raised by Six, we conclude that the plain error standard applies to the issue that Six has raised concerning the instructions. Furthermore, it is our conclusion that the instructions, when read together and in the light of each other, were adequate to inform the jury that, in order to find Six guilty, they had to find that all of the elements listed in Instruction No. 10 existed beyond a reasonable doubt, and further that they had to find beyond a reasonable doubt that Six acted voluntarily. It is, of course, of some considerable disappoint-

ment that the trial court and the parties did not proof read and ponder these instructions a bit more methodically. Although Six is referred to as "appellant" in instruction No. 12, in context we conclude that the jury most certainly would have known that "appellant" was a reference to Six, because there really was no other possibility. However, it does point out the risks of using an indefinite noun, when a definite noun is readily available, i.e., "Six," versus "defendant" or "appellant." In addition, the intent element should, of course, have been included in Instruction No. 10 with the other elements, and it is difficult for us to grasp why it was not. Nonetheless, while that represents a deficiency, it does not rise to a level where we are willing to say that Six was prejudiced by that oversight. While the error is readily identifiable in the record, and the applicable rule of law is clear and unequivocal, that rule was not violated in a clear and obvious way. Because the rule was substantially met by the instructions, we conclude that Six was not prejudiced by the error, and we decline to reverse his conviction on that basis.

### CONCLUSION

[¶ 22] The failure of the State to provide Six with an initial appearance as set out in W.R.Cr.P. 5(a) does not require dismissal of the charge against him. The instructions were adequate, and the infirmities identified in them do not necessitate reversal of his conviction. Therefore, the judgment and sentence of the district court are affirmed.