2012 WY 17

**Carl William PETERSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0140.

Supreme Court of Wyoming.

Feb. 9, 2012.

650

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Olson, Appellant Counsel; David E. Wes-

tling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Joshua Beau Taylor, Student Director, and Anthony Barton, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Taylor.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Carl William Peterson appeals his convictions for second degree sexual abuse of a minor and soliciting a minor to engage in sexual relations, raising multiple allegations of ineffective assistance of trial counsel. We will affirm.

## ISSUE

[¶ 2] Peterson presents the following issue for our review:

Did the cumulative effect of trial counsel's general lack of preparation, failure to investigate, failure to propose jury instructions and general incompetence amount to ineffective assistance of counsel?

## FACTS

[¶ 3] The victim, born in 2002, resided with Peterson and his girlfriend, SP, in 2007. While living there, the victim and Peterson frequently played a "naked game" in which the two touched each other's private parts with their hands or a "purple thing."[1] According to the victim, SP occasionally participated in the game and, at Peterson's direction, the victim would also touch her private parts[2] with either his hands or the purple thing.

[¶ 4] In September 2007, the victim was at his grandparents' house in Rapid City, South Dakota, with his two-year-old cousin.

As the grandmother prepared the two for a bath, she was interrupted by a telephone call. When she entered the bathroom, she observed the victim on his knees with his mouth on his cousin's penis. She asked the victim about his actions, and he responded that he had not hurt his cousin or done all the things that Peterson had done to him. The grandmother subsequently contacted Lisa Porisch, a licensed professional mental health counselor in Rapid City.

[¶ 5] During his therapy sessions with Porisch, the victim reported, among other things, that Peterson had made him lick his "peepee," Peterson had touched his "peepee," he had played and slept naked with Peterson, and that he was scared a lot of the time. Porisch reported the victim's allegations to the Department of Social Services in South Dakota, which in turn reported the alleged sexual abuse to the Wyoming Department of Family Services. Thereafter, Lara Hawkins of the Child Advocacy Center of the Black Hills in Rapid City conducted a standard and follow-up forensic interview of the victim, during which he described in detail his sexual activities with Peterson, and forwarded her report summarizing those interviews to Child Protection Services in Rapid City and to the Campbell County Sheriff's Department in Wyoming. Eventually, the victim was placed in a children's residential home in South Dakota because he was performing or attempting to perform overtly sexual acts with other children and was highly sexualized.

[¶ 6] On December 6, 2007, Investigator Gary Sams of the Campbell County Sheriff's Department interviewed Peterson's girlfriend, SP, regarding the victim's allegations. SP described two specific incidents to Investigator Sams. The first took place between July 1 and 16, 2007, when she witnessed Peterson and the victim in the living room of their residence masturbating each other. The second one occurred between July 16 and August 1, 2007, when she, the victim, and Peterson were naked in bed together. According to SP, Peterson directed the victim

---

1. The victim described their "private parts" as the "weinus" and "butt" and the "purple thing" as an object six to eight inches in length that tickled.

2. The victim described SP's private parts as her "cagina" and "boobs."

to, and the victim did, use a sexual toy on her. SP reported this occurred after the three had finished watching a pornographic movie.

[¶ 7] A week later, on December 12, 2007, the State filed a four-count Felony Information charging Peterson with second degree sexual abuse of a minor under Wyo. Stat. Ann. § 6–2–315(a)(iii) (LexisNexis 2011)[3] (Count I), two counts of first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6–2–314(a)(ii) (LexisNexis 2011)[4] (Counts II and III), and soliciting a minor to engage in sexual relations under Wyo. Stat. Ann. § 6–2–318 (LexisNexis 2011)[5] (Count IV). After several continuances, Peterson's jury trial began on September 21, 2009. The jury found Peterson guilty on Counts I and IV but acquitted him on Counts II and III. The district court sentenced Peterson to eighteen to twenty years on the sexual abuse count and to a consecutive term of four to five years on the soliciting count. Peterson then initiated this appeal.

[¶ 8] Contemporaneously with the filing of his appellate brief in this Court, Peterson filed a motion seeking a partial remand to the district court to develop evidence concerning the effectiveness of his trial counsel. We granted the remand motion and directed the district court to consider the following four issues: (1) whether trial counsel failed to conduct a proper investigation and failed to interview witness SP prior to trial; (2) whether trial counsel was ineffective with regard to the competency/taint hearing involving the minor victim and with regard to a *Daubert* hearing;[6] (3) whether trial counsel was ineffective because he did not dedicate his full attention to the trial; and (4) whether trial counsel was ineffective with regard to his cross-examination of the victim. The district court held an evidentiary hearing and determined that trial counsel was not ineffective in his representation of Peterson. The case then returned to this Court for briefing and argument. Additional facts will be set forth as necessary in our discussion of Peterson's ineffectiveness claims.

## DISCUSSION

[¶ 9] Peterson maintains that trial counsel's assistance during the criminal proceedings was constitutionally deficient. Peterson's ineffectiveness argument primarily focuses on the complaints that were the subject of the remand hearing and ultimately rejected by the district court.[7] In addition, he faults counsel for not conducting an adequate voir dire, for not offering any theory of defense instructions, and for giving what he deems a "lackluster" opening statement.

[¶ 10] For Peterson to prevail on an ineffectiveness claim, Peterson must first

---

3. § 6–2–315(a)(iii) provides in part:

   (a) Except under circumstance[s] constituting sexual abuse of a minor in the first degree as defined by W.S. 6–2–314, an actor commits the crime of sexual abuse of a minor in the second degree if:
   * * * *
   (iii) Being eighteen (18) years of age or older, the actor engages in sexual contact with a victim who is less than eighteen (18) years of age ... [.]

4. § 6–2–314(a)(ii) states in part:

   (a) An actor commits the crime of sexual abuse of a minor in the first degree if:
   * * * *
   (ii) Being eighteen (18) years of age or older, the actor inflicts sexual intrusion on a victim who is less than eighteen (18) years of age ... [.]

5. § 6–2–318 makes it a crime for any person who has reached the age of majority to solicit, pro-

cure or knowingly encourage anyone "less than the age of fourteen (14) years, or a person purported to be less than the age of fourteen (14) years, to engage in sexual intrusion as defined in W.S. 6–2–301[.]"

6. In *Bunting v. Jamieson*, 984 P.2d 467, 471 (Wyo.1999), this Court adopted the two-pronged test of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), for determining the admissibility of expert testimony. The first prong requires the trial court to determine whether the expert's methodology is reliable. If the trial court concludes that it is reliable, then the court must determine whether the expert's proposed testimony is relevant. *Bunting*, 984 P.2d at 471–72.

7. Although the subjects were addressed at the remand hearing, Peterson has not presented any argument to this Court regarding trial counsel's representation at the *Daubert* hearing or counsel's alleged inattentiveness at trial. We therefore will not address these matters in this appeal.

establish that trial counsel's performance was deficient. This requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Dettloff v. State*, 2007 WY 29, ¶ 18, 152 P.3d 376, 382 (Wyo.2007); *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 593 (Wyo.2006). Peterson then must demonstrate that counsel's deficient performance prejudiced his defense. Under the prejudice prong, Peterson must demonstrate a reasonable probability exists that, but for counsel's deficient performance, the outcome of his trial would have been different. *Dettloff,* ¶¶ 18–19, 152 P.3d at 382. The failure to make the required showing of either deficient performance or sufficient prejudice will defeat an ineffectiveness claim. *Id.,* ¶ 19, 152 P.3d at 382. In order to satisfy his burden of proving counsel rendered constitutionally ineffective assistance, Peterson must provide more than mere speculation or equivocal inferences. *Duke v. State*, 2004 WY 120, ¶ 36, 99 P.3d 928, 943 (Wyo.2004).

[¶ 11] When reviewing ineffectiveness claims, we examine counsel's conduct in light of all the circumstances in determining whether the identified acts or omissions were outside the ambit of professionally competent assistance. *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992). We do not evaluate the efforts of counsel from a perspective of hindsight but endeavor to reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. In this regard, we invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

[¶ 12] Claims of ineffective assistance of counsel entail mixed questions of law and fact. *Sanchez v. State*, 2011 WY 77, ¶ 40, 253 P.3d 136, 147 (Wyo.2011); *Robinson v. State*, 2003 WY 32, ¶ 14, 64 P.3d 743, 747 (Wyo.2003). On review of a district court's remand decision, we defer to the district court's findings of fact unless they are clearly erroneous. However, we conduct a de novo review of the district court's legal conclusions. *Strandlien v. State*, 2007 WY 66, ¶ 20, 156 P.3d 986, 992 (Wyo.2007); *Robinson,* ¶ 16, 64 P.3d at 748.

### Failure to Investigate and Interview Witness SP

[¶ 13] Peterson alleges that trial counsel failed to adequately investigate and interview SP, whom he claims was a key witness for the State, prior to trial. As previously noted, SP stated during an interview with law enforcement that she had witnessed one incident of sexual contact between Peterson and the victim and participated in one incident where Peterson directed the victim to initiate sexual contact with her. She subsequently recanted her statements, claiming they were coerced. However, based on those statements, SP was twice tried on charges similar to Peterson's. The first trial resulted in a mistrial and the second resulted in an acquittal. At each trial, she denied the truth of the incriminating statements she made during her police interview.

[¶ 14] Peterson's trial counsel attended one of those trials to listen to SP's testimony and also obtained a transcript from one of the trials. Before the first trial, counsel also attended a motion hearing, during which SP "laid it out chapter and verse" what had occurred between Peterson and the victim, and basically "what she was accused of and how she responded to it, and why she responded that way." At the remand hearing, trial counsel testified that was exactly the kind of information he would have tried to gather from SP in an interview. Although counsel knew the likely content of SP's testimony, he still personally interviewed her twice prior to her testifying at Peterson's trial, the first interview lasting twenty to thirty minutes and second one lasting for about an hour. Counsel stated he also spoke

with SP briefly after the motion hearing he attended.

[¶ 15] Despite counsel's efforts, Peterson now complains that they were insufficient, citing *King v. State*, 810 P.2d 119 (Wyo.1991), and *Gist v. State*, 737 P.2d 336 (Wyo.1987), for the proposition that a strategic justification for an attorney's omission cannot be extended to the failure to adequately investigate. In *King*, the defense attorney failed to interview or call two witnesses who were allegedly at the scene of the alleged crime and would have supported King's claim that the crime never occurred. *King*, 810 P.2d at 120–23. In *Gist*, defense counsel did not interview Gist's brother—owing to a suspected conflict of interest—even though Gist had maintained it was his brother who had actually committed the charged crime, a crime to which Gist's brother later confessed. *Gist*, 737 P.2d at 339–40.

[¶ 16] *King* and *Gist* are distinguishable from the instant case. Those cases revolve around the failure of defense counsel to interview and call a witness who allegedly possessed information that would bolster the defendant's position. In this case, Peterson's attorney did in fact investigate and interview SP. Furthermore, unlike the potentially critical defense witnesses in *King* and *Gist*, SP was called by the State because she initially asserted she was an eyewitness to Peterson's crimes. On the stand, under examination by both the State and Peterson's counsel, SP testified as she did at her trials and the motion hearing observed by trial counsel. That is, she asserted that the inculpatory statements she made to law enforcement were lies prompted by an investigator's coercive suggestion that her cooperation would allow her to retain custody over her children.

[¶ 17] The law is well-settled that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Duke*, ¶ 55, 99 P.3d at 947; *Asch v. State*, 2003 WY 18, ¶ 40, 62 P.3d 945, 958 (Wyo.2003); *see also Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066. In assessing counsel's performance, we consider all of the circumstances existing at the time counsel made the investigative decision and will af-

ford a heavy measure of deference to counsel's judgment. *Duke*, ¶ 55, 99 P.3d at 947; *Asch*, ¶ 41, 62 P.3d at 958–59. After careful review, we conclude that trial counsel made a reasonable investigative decision in this case.

[¶ 18] As already noted, and as the district court found, trial counsel knew what SP had told the police during their investigation and knew what she had testified to during her two trials by virtue of his attendance at one of those trials and the motion hearing and his review of the transcript of her testimony from at least one of the trials. In addition, counsel had been in contact with SP's attorney and obtained some notes from him regarding SP and had contacted an investigator for SP's attorney, who shared information concerning at least one interview he conducted with SP. Counsel also spoke with Peterson regarding SP and the testimony she could offer at trial. Furthermore, counsel twice interviewed SP before she testified. In light of these circumstances, counsel's decision not to further interview SP was certainly reasonable.

[¶ 19] In sum, Peterson has failed to demonstrate that counsel's investigation and evaluation of SP's likely testimony was flawed and outside the realm of professionally competent assistance. Accordingly, his ineffectiveness claim cannot be sustained.

### Competency Hearing

[¶ 20] Prior to trial, the district court held a hearing to determine the victim's competency to testify at trial. Before that hearing, trial counsel conferred with his expert witness, Dr. Terrance Campbell, and submitted questions for the district court to ask the victim at the hearing, including questions of possible fabrication. During the hearing, the district court disallowed any inquiry regarding the facts and circumstances supporting the criminal charges and did not permit counsel to examine the child. Trial counsel did not advance any evidence that the child's memory of the events was tainted and, instead, reserved the right to advance such evidence at trial. At the conclusion of the hearing, the district court found the victim competent to testify.

[¶ 21] Peterson maintains counsel was ineffective at the competency hearing because he did not inquire whether the victim's recollection of the alleged criminal activity had been tainted. We have not previously addressed this precise issue. However, persuasive case law from other jurisdictions belies his contention. For example, in addressing the question of an allegedly tainted child witness in a competency hearing, courts have held that evidence of suggestive questioning or coercive pretrial interviews goes to the credibility or reliability of a witness rather than to the admissibility of testimony, and that such is a matter more properly addressed to the jury during cross-examination or by introducing contradictory evidence or expert testimony. *See State v. Smith*, 225 W.Va. 706, 696 S.E.2d 8, 14–15 (2010); *State v. Bumgarner*, 219 Or.App. 617, 184 P.3d 1143, 1151–52 (2008).

[¶ 22] Trial counsel implemented such safeguards during his cross-examination of the victim, the victim's grandmother, and Lisa Porisch, and through his direct examination of the defense expert witness, Dr. Campbell. Counsel chose to make the victim's credibility an issue at trial, so that the child's inconsistent statements could be brought out in front of the jury and examined through the lens of the defense expert witness. Moreover, counsel successfully advanced at trial evidence of taint and the implication that the victim's account of the alleged offenses was the product of such taint. As the district court found, the defense strategy was to demonstrate to the jury that the victim was not a credible witness.

[¶ 23] Peterson's appellate challenge to trial counsel's strategy consists almost entirely of a groundless *ad hominem* attack. He otherwise abdicates his responsibility to show the issue of taint must be addressed at a competency hearing, or to show that counsel's decision to address that issue at trial was both incompetent and prejudicial. He makes no showing that presenting his slight evidence of taint at the competency hearing would have prevented the child from testifying, or that presenting the evidence only at trial lessened his chances of acquittal. His

failure to make the required showing of deficient performance and resulting prejudice defeats his ineffectiveness claim. *Dettloff*, ¶ 19, 152 P.3d at 382.

### Cross-examination of the Minor Victim

[¶ 24] Peterson next contends trial counsel was ineffective because he failed to cross-examine the victim on any issue of substance. In support of his position, Peterson quotes at length an American Jurisprudence section that addresses an approach for cross-examining child witnesses. Peterson, however, offers no authority holding that the cited approach must be followed or that the failure to follow it constitutes *per se* ineffectiveness. At best, that approach to cross-examining children is only a suggestion which may be adopted in the interest of trial strategy.

[¶ 25] At the remand hearing, counsel testified he chose not to aggressively cross-examine the minor victim, so as to minimize the jury's antipathy towards Peterson and its sympathy for the victim. His trial strategy was simply to elicit inconsistent statements from the victim and then to address the significance of those inconsistencies through his examination of his expert witness, Dr. Campbell. Peterson provides no convincing argument that counsel's trial strategy was in any way constitutionally deficient. Moreover, Peterson does not provide any insight, within the context of the facts of this case, how the outcome of his trial might have been different had counsel cross-examined the victim in a different manner. In short, Peterson has not shown counsel was ineffective in this respect.

### Voir Dire

[¶ 26] Peterson claims trial counsel did not adequately question jurors during the voir dire process. The purpose of voir dire "is to seek to establish grounds for challenge for cause; assess any individual bias as to each member of the panel; and to arrive at a determination of the potential jurors' ability to decide a case fairly." *Vit v. State*, 909 P.2d 953, 960 (Wyo.1996). Because voir dire questioning techniques are diverse, any inadequacy in voir dire question-

ing must be egregious to fall below the line of competence. *Arner v. State*, 872 P.2d 100, 105 (Wyo.1994).

[¶ 27]  Having these principles in mind, we have carefully examined the record of the voir dire.  Nothing in our review convinces us that trial counsel's performance was outside the wide range of professionally competent assistance.  Simply because Peterson in hindsight believes counsel should have posed additional questions or pursued other areas of inquiry does not mean counsel was ineffective for failing to do so.

*Jury Instructions*

[¶ 28]  Peterson scores counsel for failing to offer any defense instructions.  Specifically, he contends counsel had an obligation to offer instructions outlining his theory of the case.  The fatal flaw in Peterson's argument is that he has not identified with any specificity the theory of defense instructions counsel was remiss in not promoting or, for that matter, what such instructions might have entailed under the facts of this case.  Moreover, Peterson has failed to present any argument identifying the prejudice flowing from counsel's omission.  Given these deficiencies, we summarily reject his ineffectiveness claim.

*Opening Statement*

[¶ 29]  Lastly, Peterson takes issue with trial counsel's opening statement.  However, Peterson does not develop this ineffectiveness claim with cogent argument and citation to pertinent legal authority.  Consequently, we will not consider it further.

## CONCLUSION

[¶ 30]  Peterson has failed to sustain his burden of proving that he was deprived of his constitutional right to the effective assistance of counsel.  Throughout his trial, defense counsel vigorously represented him and challenged the State's evidence.  As a result of counsel's representation, Peterson was acquitted of two of the most serious charges brought against him.  That the jury found him guilty on the remaining counts does not

entitle him to prevail on his ineffectiveness claim.  Affirmed.