2012 WY 69

**Timothy David KRAMER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0043.**

Supreme Court of Wyoming.

May 17, 2012.

Representing Appellant: Donna D. Domonkos, Domonkos Law Office, Cheyenne, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Timothy David Kramer was convicted of attempted first-degree murder and complains on appeal that the jury was improperly instructed, that he received ineffective assistance of counsel, and that a witness improperly testified by video conference. We affirm.

## ISSUES

[¶ 2] Kramer lists three issues for our consideration:

1. The jury was not properly instructed on the elements of first-degree murder as the instructions did not state the jury had to find unanimously that Kramer did not act in the defense of others and the verdict form did not give the jury a venue to make this finding.

2. Kramer received ineffective assistance of counsel when his counsel failed to investigate the case and failed to object to the proposed jury instructions.

3. The trial court erred when it allowed one of the main witnesses in the trial to testify via video conference.

## FACTS

[¶ 3] On March 4, 2009, Timothy Kramer, Steven Devore, and Joseph Weller began drinking at the Rifleman Bar in Rawlins. After some time, the men left the bar and began arguing while driving. An argument ensued, according to testimony elicited at trial, and Kramer then made both Devore and Weller exit the vehicle. During the exit, Devore broke a window and words were exchanged. Kramer then went to his home and loaded his gun. While doing so, Kramer said he was thinking of his mom and sister, and that they always leave the front door

unlocked—he was "scared" of what Devore might do to them.

[¶ 4] Kramer left his apartment "in a rage," according to a friend who saw him in the parking lot. Kramer proceeded to where Devore was staying. When Devore answered the door, Kramer immediately shot him eight times and then got in his car and drove away. Kramer was arrested just north of Lyman a few hours later.

[¶ 5] Amazingly, Devore did not die and after a jury trial, Kramer was convicted of attempted first-degree murder in violation of Wyo. Stat. Ann. § 6–1–301(a)(i) (LexisNexis 2011). The court sentenced him to life in prison, and this appeal followed.

## DISCUSSION

### Jury Instructions

[¶ 6] First, Kramer claims that the jury was not properly instructed on the elements of first-degree murder because the instructions did not state that the jury had to find unanimously that Kramer did not act in the defense of others and also that the verdict form did not give the jury a venue to make this finding. The State responds that no clear rule of law obligated the court to blend the elements instructions with the defense-of-others instructions and that as a whole, the instructions effectively identified the issues that the jury needed to resolve, explained which party bore the burden of proof as to each issue, and instructed the jury that its findings needed to be unanimous regarding those issues.

[¶ 7] Because Kramer did not object to this issue below, we review his claim for plain error. *Six v. State*, 2008 WY 42, ¶ 12, 180 P.3d 912, 917 (Wyo.2008). To establish plain error, Kramer must demonstrate that the alleged error clearly appears in the record and that the district court clearly violated an obvious and unequivocal rule of law by giving the challenged instructions. Kramer must also demonstrate a reasonable possibility that but for the error, he would have received a more favorable verdict. *Id.*

[¶ 8] This Court will uphold a challenged conviction if the instructions, examined as a whole, correctly state the law and cover the relevant issues. *Daves v. State*, 2011 WY 47, ¶ 12, 249 P.3d 250, 255 (Wyo.2011). Here, the court instructed the jurors that they had to unanimously determine each issue in the case. Furthermore, the jurors were instructed regarding Kramer's defense-of-others justification, and also that the premeditated malice element of first-degree murder required proof that Kramer shot his victim "without legal justification or excuse." The elements of Kramer's defense were definitely set out and clearly explained that the State carried the burden of disproving that defense beyond a reasonable doubt. The district court directed the jurors to consider whether Kramer justifiably shot Devore and directed them to decide whether the State had disproved Kramer's defense. Furthermore, the jurors were properly instructed on what law to apply in resolving those issues. Accordingly, Kramer has failed to satisfy his burden in overcoming plain error. Similarly, Kramer fails on appeal to direct this Court to a rule of law that requires a trial court to provide a verdict form that includes more than "not guilty" as a way to indicate that a defendant was justified in shooting someone.

### Ineffective Assistance

[¶ 9] In his next issue Kramer asserts that his trial attorneys were ineffective for failing to properly investigate and for failing to object to jury instructions that ostensibly omitted an element of the alleged crime, forcing Kramer to a higher burden of proof.

[¶ 10] For Kramer to prevail on his effectiveness claim, the first question we must answer is whether trial counsel's performance was outside the wide range of professionally competent assistance. *Gleason v. State*, 2002 WY 161, ¶ 44, 57 P.3d 332, 346–47 (Wyo.2002). "[A]n appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient[.]" *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Ordinarily, he must also demonstrate that prejudice resulted.

Under this test, the inquiry is whether or not counsel rendered the assistance a reasonably competent attorney would have offered and if not, whether his failure to do so prejudiced the defense of the case. *Id.*

[¶ 11] In evaluating effectiveness claims, we

examine counsel's conduct in light of all the circumstances in determining whether the identified acts or omissions were outside the ambit of professionally competent assistance. *Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992). We do not evaluate the efforts of counsel from a perspective of hindsight but endeavor to reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. In this regard, we invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995) (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

*Peterson v. State,* 2012 WY 17, ¶ 11, 270 P.3d 648, 653 (Wyo.2012).

[¶ 12] In this case, an evidentiary hearing was held by the district court to develop Kramer's claims of ineffective assistance. When that is the case, this Court has explained our standard of review as follows:

Where the trial court has heard and decided the issue, we will not disturb that court's findings of fact unless they are clearly erroneous or against the great weight of the evidence. We will, on the other hand, conduct a *de novo* review of the trial court's conclusions of law, which include the question of whether or not counsel's conduct was deficient and the question of whether or not the appellant was prejudiced by that deficient conduct.

*Eaton v. State,* 2008 WY 97, ¶ 35, 192 P.3d 36, 61 (Wyo.2008) (citations omitted).

[¶ 13] First, we can quickly dispose of Kramer's claim that trial counsel was ineffective by not objecting to the jury instructions. As we explained above, the jury instructions in this case are appropriate. Furthermore, as the State notes, Kramer cites no rule of law that would have prompted defense counsel to find these instructions problematic so much so they necessitated an objection. Collectively, the instructions given thoroughly explained Kramer's defense and the State's burden of proof, and we thus find no error in counsel not objecting to them.

[¶ 14] Moving forward, Kramer also claims that his trial counsel was ineffective by failing to properly investigate the timeline of events and failing to properly investigate the victim's propensity for violence. As we noted above, after this Court directed a remand pursuant to the framework set out in *Calene v. State,* 846 P.2d 679, 692 (Wyo. 1993), the trial court held a hearing to develop these issues further. This Court limited the issues to be heard to two: (1) Trial counsel did not conduct a reasonable investigation into the timing of Kramer's travels on the day of the offense and failed to adequately defend that aspect of the case; and (2) Trial counsel did not conduct a reasonable investigation into, and present evidence of, the victim's character traits, including violent propensity. After the hearing, the district court ruled that counsel was not ineffective for failure to investigate because the evidence presented at the hearing showed that defense counsel actually had investigated the matter and presented the best evidence available. We accept the district court's findings of fact unless they are clearly erroneous. *Robinson v. State,* 2003 WY 32, ¶ 14, 64 P.3d 743, 747 (Wyo.2003). However, we review the district court's conclusions of law *de novo. Id.*

[¶ 15] Kramer argues that his trial attorneys failed to accurately estimate and present to the jury how much time passed between Devore breaking the vehicle window and Kramer shooting Devore. Kramer contends that a more precise estimation of events would have essentially shown that

Kramer had not acted with premeditation. However, the district court noted in its decision letter that the various estimates of Kramer's travels on that day (from both defense counsel's expert, Dr. Golding, and Kramer's friend, Rowley) could not account for the time it may have taken Kramer to drive to his apartment in the first place, go into his apartment, retrieve his gun from a lock-box which was in a bag in a closet, load the gun bullet by bullet, get back in his car, talk to Rowley (who testified that he repeatedly tried to calm Kramer down), and then finally drive to Devore's place. As the State points out, neither Kramer nor the record suggest how a more accurate estimate could be made nor does Kramer explain what evidence defense counsel could have provided that would have compelled the jury to render a different verdict. Though the precise timing of events is incalculable, the jury was provided with tools—Dr. Golding's report and testimony, testimony from Devore and Weller, and a street map—to make an adequate decision. We do not find deficient performance by defense counsel in this regard.

### Investigation into Victim's Propensity for Violence

[¶ 16] Regarding trial counsel's alleged inadequate investigation, Kramer argues that had defense counsel delved further into the victim's background, the inquiry would have revealed a violent character and helped to prove Kramer's theory of defense. Four people testified regarding Devore's reputation at the *Calene* hearing. However, of the four witnesses, two became acquainted with Devore after the shooting and thus could not speak to his character relevant to the night of the shooting. The other two witnesses testified about specific instances of violence by Devore that happened after the shooting. At trial, the jury heard evidence regarding Kramer's state of mind at the time he confronted Devore, and that Kramer's mother and sister, who he was ostensibly protecting, were not present at the time of the shooting. Taking all of this into consideration, we cannot conclude that counsel was ineffective for not further investigating Devore's background.

### Right to Confrontation

[¶ 17] In his final issue, Kramer contends that the district court violated his federal constitutional right to confront Weller, the third occupant of the vehicle who witnessed the events surrounding the shooting. Weller had since been committed to a mental institution in Montana. Having heard evidence that Weller's well-being was best ensured by staying in the hospital, the district court allowed Weller to testify by video conference.

[¶ 18] Because Kramer objected at trial and argued that his constitutional right to confront the witness against him would be violated by allowing Weller to testify by video conference, we review his claim on appeal *de novo*. *Bowser v. State*, 2009 WY 54, ¶ 7, 205 P.3d 1018, 1020 (Wyo.2009). To some extent, a trial court's decision to allow a witness to testify by video conference is left to the reasonable discretion of the court. *See Bush v. State*, 2008 WY 108, 193 P.3d 203 (Wyo.2008).

[¶ 19] Generally, the Sixth Amendment right to confrontation requires a witness against a criminal defendant to be physically present at the defendant's trial. *See Ryan v. State*, 988 P.2d 46, 59 (Wyo. 1999). While it has been broadly stated that the confrontation clause of the Sixth Amendment "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), it is generally accepted that the confrontation clause actually "reflects a *preference* for face-to-face confrontation at trial." *Craig*, 497 U.S. at 849, 110 S.Ct. 3157 (quoting *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (emphasis in original). However, a trial court may limit that right and allow a witness to testify by video conference when "1) it is necessary to further an important public policy, and 2) the reliability of the testimony is otherwise assured." *Bush*, ¶ 49, 193 P.3d at 215; *Maryland v. Craig*, 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). When the important public policy is protecting a person's physical health and the general well-being of the pub-

lic, a trial court may allow a hospitalized witness to testify by video conference. *Id.*

[¶ 20] In *Bush*, the witness suffered from a medical condition described as "serious and severe, and not temporary[.]" *Id.* ¶ 52, 193 P.3d at 215. He suffered from congestive heart failure and was hospitalized and in "profoundly poor" condition. *Id.* ¶ 47, 193 P.3d at 214. His physician was adamant that traveling from Colorado to Wyoming would be detrimental to his health. Accordingly, the trial court permitted the witness to testify by video conference and found that such was necessary for his health and that the reliability of his testimony would not thereby suffer. On appeal, this Court found that the district court did not violate Bush's right to confrontation. *Id.* ¶¶ 46, 53, 193 P.3d at 215–16.

[¶ 21] Unlike *Bush*, the witness in this case suffers mental ailments rather than physical ones but his mental condition rendered Weller just as unhealthy and unstable as the witness in *Bush*. After a "rather severe suicide attempt," a Montana district court committed Weller to the Montana State Hospital finding that he posed a substantial risk to himself and others. His condition was so severe that hospital staff checked on him every fifteen minutes, and his psychiatrist re-evaluated his medication program "ongoingly [sic]." That same psychiatrist expressly advised against having Weller travel to Rawlins to testify.

[¶ 22] The district court took more than adequate measures to ensure the reliability of Weller's testimony. The court swore him in prior to testifying, and defense counsel cross-examined him in front of both Kramer and the jury. We conclude, in light of the facts of this case, that the court's decision to allow Weller to testify by video conference was justified. The two-part *Craig* test was satisfied here and we thereby affirm the district court.

## CONCLUSION

[¶ 23] Plain error was not committed when instructing the jury. No clear rule of law obligated the district court to blend the elements instructions with the defense-of-

others instructions and as a whole, the instructions effectively identified the issues that the jury needed to resolve. Furthermore, Kramer received effective assistance of counsel and counsel's investigation was sufficient. Finally, the district court did not abuse its discretion or violate Kramer's confrontation right when it allowed a witness to testify by video conference. Under the circumstances, presentation of his testimony in that manner was necessary to further an important public policy and the reliability of the testimony was otherwise assured. Affirmed.