# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 39

APRIL TERM, A.D. 2013

April 3, 2013

DEON ALLEN LEONARD,

Appellant
(Defendant),

v.                                                      S-12-0185

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Jere A. Ryckman, Judge*

*Representing Appellant:*
James P. Castberg, Sheridan, WY.

*Representing Appellee:*
Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Professor Darrell D. Jackson, Prosecution Assistance Clinic; Emily N. Thomas, Student Director; Caitlin Wallace, Student Intern. Argument by Ms. Wallace.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    Appellant Deon Allen Leonard, after being convicted of four counts of sexual abuse of a minor in the second degree, complains on appeal that prosecutorial misconduct occurred and that his trial counsel's performance was deficient.  We affirm.

## ISSUES

[¶2]    Leonard presents two issues:

> The prosecuting attorney's misconduct during the trial precluded [Leonard] from receiving a fair trial as guaranteed by the due process clause of the 14th amendment to the constitution.

> [Leonard] was denied a fair trial as a result of the violation of his 5th amendment right against self-incrimination caused by the deficient assistance of counsel.

## FACTS

[¶3]    Deon Leonard and Judy Green had a short-term relationship of which a child (PG) was born.  Leonard and PG had no relationship.  When PG was four years old, her mother died and PG went to live with her maternal grandparents.  Soon thereafter, Leonard began weekend visitation with PG and was soon declared PG's guardian.  PG's grandparents were granted visitation, but they remained concerned for PG's well-being.  Their concerns centered on PG's emotional status after her mother's death and Leonard's prior conviction for immoral and indecent acts committed with his minor adopted daughter.  Years earlier, Leonard had pleaded guilty to immoral and indecent acts with a child.

[¶4]    Although PG's maternal grandparents attempted to regain custody of her, their efforts failed.  From 2004 to 2012, PG lived with Leonard and his wife Dawn.  After that marriage broke up, PG was left alone with Leonard once again.  The care of PG soon fell upon neighbors and friends, John and Megan Liggett.  PG began living with the Liggetts in November of 2010 and would see Leonard on occasional weekends.

[¶5]    The Liggetts noticed PG seemed unhappy and was exhibiting sexualized behaviors uncommon for a seven year old, and sought out the school counselor's help.  However, Leonard did not approve of the counseling and because the Liggetts were not PG's legal guardians, she was only able to go to a program that allowed her to talk to her teachers. The Liggetts remained involved in PG's life and were soon granted legal guardianship over PG.  After this, PG approached Megan Liggett and asked if she ever had to see her father again.  Mrs. Liggett asked her why, and PG responded that Leonard had touched

1

her inappropriately on her personal areas, her chest, and the "parts I go pee out of." Megan Liggett informed PG's counselor, and then law enforcement and DFS, of PG's statements.

[¶6]    After an investigation and jury trial, Leonard was convicted of four counts of sexual abuse of a minor in the second degree in violation of Wyo. Stat. Ann. § 6-2-315(a)(iii) , and this appeal followed.  More facts will be elicited herefter as needed.

## DISCUSSION

### *Prosecutorial Misconduct*

[¶7]    In his first issue, Leonard contends that the State committed prosecutorial misconduct when it asked TN, a State witness called to testify about Leonard's prior sex crime conviction, whether or not Leonard ever "digitally penetrated" her.  TN was the victim of Leonard's prior sex conviction.

[¶8]    In addressing a claim of prosecutorial misconduct our focus is on any prejudice suffered by the defendant.  *Jones v. State,* 2012 WY 82, ¶ 29, 278 P.3d 729, 736 (Wyo. 2012).  Further,

> Where there has been an objection below, claims of prosecutorial misconduct are reviewed under a harmless error standard. W.R.A.P. 9.04 states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *Seymore v. State*, 2007 WY 32, ¶ 17, 152 P.3d 401, 406 (Wyo. 2007). W.R.Cr.P. 52(a) and W.R.E. 103(a) contain similar provisions.  The test for harmless error is as follows:
>
>> An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play."
>
> *Condra v. State*, 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo. 2004) (quoting *Dysthe v. State*, 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo. 2003)).

[¶9]    The specific question that Leonard alleges as misconduct by the prosecutor was asked of Leonard's adopted daughter (TN) as follows: "[TN], when these things would happen, did [Leonard] ever penetrate you with his fingers?"  TN was called to testify by

the State for the purpose of providing W.R.E. 404(b) testimony of other crimes, wrongs, or acts as evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Years earlier, Leonard had been convicted of committing immoral and indecent acts with TN. Prior to trial, the court ruled the State would be allowed to present evidence relating to TN, but the court disallowed any evidence regarding penetration of TN's vagina with Leonard's penis.[1] A review of the motion and brief filed by the State and adopted by the district court demonstrates that the proposed Rule 404(b) evidence was related to Leonard's sexual touching of TN's breasts and vagina. It follows, then, that details of how Leonard sexually touched TN's vagina would include whether or not Leonard used his hands to touch or penetrate TN's vagina.

[¶10] Considering the district court's ruling and the question asked, we conclude that the question was not improper and, moreover, was relevant to show Leonard's touching of the victim in the instant case was in fact intentional and for the purposes of his sexual gratification. The question was asked for the purposes of showing intent and motive, both proper under Rule 404(b). After a thorough review of the entire record, we cannot say that Leonard has sufficiently demonstrated that the prosecutor's question was so harmful and so prejudicial that any unfairness or injustice occurred. In fact, the court sustained the objection placed in response to the offending question and admonished the jury to disregard both the question and the answer given. However, based upon the court's earlier ruling, we conclude that the question asked was not improper and thus no prosecutorial misconduct occurred.

***Ineffective Assistance of Counsel***

[¶11] Leonard's final claim on appeal is that his trial counsel rendered ineffective assistance for not objecting to a presentence investigation (PSI) and for failing to advise Leonard that he need not submit to such an investigation. Leonard appears to take issue with some of his statements made in the PSI, and claims that his attorney's failure to advise against making those statements rendered his assistance of counsel ineffective based upon a violation of his right against self-incrimination.

[¶12] When conducting our *de novo* review of ineffective assistance of counsel claims, we apply the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). *Kramer v. State,* 2012 WY 69, ¶ 11, 277 P.3d 88, 92 (Wyo. 2012). Under that two-part test, Leonard must first establish that counsel's performance was deficient and then, if established, that counsel's conduct so undermined the proper function of the process that he was prejudiced because the trial cannot be said to have produced a just result. *Id.*

---

[1] The detailed evidence regarding the fact that Leonard had, on more than one occasion, "tried to insert his penis into TN's vagina," was included in the State's *Amended Notice of Intent to Offer Evidence Pursuant to WRE 404(b).* This specific, additional evidence was disallowed by the district court only because the notice was filed too late.

[¶13] Unfortunately for Leonard, we do not make it past the first prong. From our assessment of the record, trial counsel's performance was not deficient in this instance. Leonard participated in the presentence investigation voluntarily. He requested and agreed to the presentence investigation, he declined to answer any questions about this case, and the *Consent to Disclose* agreement was honored (such an agreement expressly limits disclosure of information about the present offense in accordance with W.R.C.P. 32(a)). Furthermore, the information contained in the PSI was not presented in any way to the jury, and the State did not present any information at trial contained within the PSI that it had not already received from other sources. That defense counsel sought a PSI prior to trial was likely strategic in case the parties managed to reach a plea agreement of some sort. They did not, and as W.R.Cr.P. 32(a) states, "except with the written consent of the defendant, the [presentence investigation] report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty."

[¶14] That his PSI could have been used against him is conjecture by Leonard. An individual does not meet his burden of showing that counsel provided deficient performance by "mere speculation or equivocal inferences." *Sincock v. State,* 2003 WY 115, ¶ 37, 76 P.3d 323, 337 (Wyo. 2003). Leonard's argument falls short of the required legal standard required to prove his counsel's performance was actually deficient and, as such, his claim is unsuccessful on appeal.

## CONCLUSION

[¶15] Leonard's conviction is affirmed. We conclude that the alleged improper question asked by the prosecutor at trial was not improper and thus no prosecutorial conduct occurred. Furthermore, Leonard does not meet his burden of showing that defense counsel's performance on his behalf was deficient.